# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELIZABETH D'AMICO,<br>    *Plaintiff*,<br><br>v.<br><br>DEPARTMENT OF CHILDREN AND FAMILIES,<br>    *Defendant*. | No. 3:16-cv-00655 (JAM) |

## RULING RE ADMISSIBILITY OF POST-TRANSFER EVIDENCE

Plaintiff Elizabeth D'Amico has brought this action against her employer, the defendant Connecticut Department of Children and Families (DCF), for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964. In essence, the complaint alleges that in April 2014 plaintiff was transferred from one position at DCF to a much less desirable position in retaliation for her prior complaints about workplace discrimination.

The case is now on the eve of trial, and the parties disagree about whether plaintiff may introduce at trial certain evidence involving her interactions with and treatment by DCF personnel after she was transferred. As an initial matter, I reject plaintiff's argument that any post-transfer adverse actions that were taken against plaintiff may constitute independent "adverse action" grounds for plaintiff's retaliation claim; the complaint alleges a single adverse action which was the transfer itself. Nevertheless, as to the scope of admissible evidence at trial, I conclude that the post-transfer evidence at issue is admissible to the extent that it may be relevant to whether plaintiff's transfer was indeed an adverse action, to whether defendant transferred plaintiff for unlawful retaliatory reasons, and to whether plaintiff sustained damages from the allegedly unlawful transfer.

1

BACKGROUND

Plaintiff filed this action on April 27, 2016, alleging that her transfer in April 2014 from a position at defendant's central office in Hartford to a position at the Connecticut Juvenile Training School ("CJTS") in Middletown was made in retaliation against her for filing several lawsuits and administrative complaints regarding workplace discrimination. Doc. #1. At a motion hearing on July 17, 2017, I denied defendant's motion for summary judgment, Doc. #30. Jury selection was held on February 1, 2018, with trial to commence on February 12, 2018. Doc. #51.

Defendant has objected to the admission of certain of plaintiff's exhibits. *See* Doc. #43 at 7–8. These exhibits depict email exchanges between plaintiff and her supervisor at CJTS, William Rosenbeck, between October 12, 2016, and March 29, 2017. Doc. #52-4. In these emails, plaintiff repeatedly requests additional responsibilities commensurate with her training and her classification, but appears to have been unsuccessful in this quest. *See ibid*. All of these emails were sent years after plaintiff's transfer to CJTS, which occurred in April 2014, and indeed were subsequent to the filing of this complaint on April 27, 2016.

DISCUSSION

The Federal Rules of Evidence provide that "relevant evidence is admissible unless" otherwise specified, but that "irrelevant evidence is not admissible." Fed. R. Evid. 402. "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Evidence need not be conclusive in order to be relevant." *United States v. Monsalvatge*, 850 F.3d 483, 494 (2d Cir. 2017). Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the

issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Defendant argues that the email exhibits at issue are not relevant, because they relate to plaintiff's interactions with management more than two years after plaintiff's transfer in 2014. Plaintiff argues in response that such post-transfer evidence is relevant, because the April 2014 transfer is not the only adverse action at issue in this case—that her complaint encompasses not just her transfer in 2014 but also her later mistreatment at CJTS all the way to the present day.

I do not completely agree with either party. First, I don't agree with plaintiff that her retaliation claim is premised on any and all adverse acts against plaintiff that occurred after plaintiff's transfer. The complaint in this case quite specifically alleges that the transfer itself was the adverse action upon which her retaliation claim rests, as distinct from any mistreatment that occurred after the transfer. The complaint alleges that "It [*i.e.*, plaintiff's transfer to CJTS] constitutes an adverse action" and that "the plaintiff's aforesaid involuntary transfer constitutes retaliation against her." Doc. #1 at 5 (¶¶ 16–17). The complaint does not allege any other acts as adverse actions. It is far too late in the day for plaintiff to amend her complaint to allege as additional adverse actions any and all acts of mistreatment that occurred after her transfer.

Yes, it is true that the complaint further alleges that the transfer "remains in effect to this day" and describes how the "involuntary transfer out of the plaintiff's area of expertise has increased her commuting distance" and has been "degrading and insulting to her because it deprives her of the opportunity to work in the area wherein she is an acknowledged authority and expert and requires her to perform relatively insignificant duties for which she is not particularly qualified." *Id.* at 5-6 (¶¶ 15–16). But these allegations do no more than describe the consequences of the singular adverse action—the transfer itself—that the complaint alleges. The

Court will therefore instruct the jury that the only "adverse action" for purposes of plaintiff's retaliation claim is the transfer of plaintiff from Hartford to Middletown to a new position with new responsibilities.

That brings me to where I disagree with defendant and its claim that the post-transfer emails at issue are not relevant. To the contrary, plaintiff's theory is that she was proverbially put out to pasture by being transferred to CJTS. She says that she was given no meaningful work to do and that this was done deliberately to retaliate for her earlier discrimination complaints. If the jury agrees that plaintiff's career was indeed sidetracked by her transfer, the jury might well infer that this was defendant's very intent. Thus, the post-transfer evidence goes to two separate elements of plaintiff's claim: first, that her transfer to CJTS constituted an adverse employment action, and second, that the transfer had a retaliatory purpose.

It is also undoubtedly relevant to the question of damages. Should plaintiff prevail as to liability, the jury will have to consider how much to award her as compensation for emotional distress and any other damages she might have suffered as a result of the transfer, and this will require hearing evidence about plaintiff's treatment at CJTS. Defense counsel conceded as much at the pretrial conference. Accordingly, defendant's objection to the introduction of Plaintiff's Exhibits 31, 32, 34, 35, 36, and 37 is overruled.[*]

---

[*] Apart from defendant's relevance objection, there has been no substantial claim by defendant that the post-transfer evidence at issue would cause unfair prejudice or any other malady under Rule 403.

## CONCLUSION

For the foregoing reasons, defendant's objection to the admission of Plaintiff's Ex. 31, 32, and 34–37 is OVERRULED.

It is so ordered.

Dated at New Haven this 9th day of February 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge